UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MARINA RONZONI and MORGAN MITCHELL,

                        Plaintiffs,

              - against -

UNITED STATES OF AMERICA, UNITED STATES
DEPARTMENT OF TRANSPORTATION, UNITED
STATES MERCHANT MARINE ACADEMY and
CAPTAIN ANTHONY J. CERAOLO,

                        Defendants.
------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL REQUESTED**

The plaintiffs, Marina Ronzoni ("Ronzoni") and Morgan Mitchell ("Mitchell") ("Plaintiffs"), by their attorneys, Hogan & Cassell, LLP, as and for their Complaint against the defendants, United States of America, United States Department of Transportation, United States Merchant Marine Academy and Captain Anthony J. Ceraolo (collectively "Defendants"), allege the following:

**SUMMARY OF THE CLAIMS**

1.     This is an action for declaratory, injunctive and equitable relief based upon Defendants' conduct resulting in the improper setback of Plaintiffs for one year as punishment based upon a finding resulting from an Honor Board. As set forth herein, the procedures used by the United States Merchant Marine Academy (the "Academy") relating to Plaintiffs was in violation of the Academy's own rules and procedures and the punishment imposed was issued in bad faith and was arbitrary and capricious. In fact, it is undeniable that Defendants failed to follow the Academy's own written procedures relating to an investigation for alleged lying pursuant to the Academy's Honor Manual. And, the penalty imposed upon Plaintiffs far exceeded the penalty imposed upon Midshipmen who were charged with similar conduct, epitomizing that the penalty

is arbitrary, capricious and in bad faith and was solely meted out to Plaintiffs for exercising their rights in seeking reconsideration of the penalty imposed upon them.

## JURISDICTION AND VENUE

2. This action arises under the Administrative Procedures Act, 5 U.S.C. § 701, et seq. and the Due Process Clause of the Fifth Amendment.

3. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 2201.

4. Venue is properly established in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) as the acts complained of occurred in the Eastern District of New York.

5. This is not an action that seeks to recover for any claims for negligence or any claims that could be covered by the Tort Claims Act. Thus, Plaintiffs are not required to serve a Notice of Claim.

## JURY DEMAND

6. Plaintiffs demand a trial by jury in this action on each and every one of their claims for which they are entitled to a jury.

## THE PARTIES

7. Ronzoni is an individual who resides in New York. Mitchell is an individual who resides in Mississippi. Ronzoni and Mitchell lived at the Academy until December 5, 2025.

8. At all times set forth herein, upon information and belief, the defendant United States Department of Transportation is an agency of the United States of America, located at the West Building, 1200 New Jersey Avenue, SE, Washington, D.C. Upon information and belief, the United States Department of Transportation operates, funds and/or maintains the United States Merchant Marine Academy, located at Kings Point, New York.

9. At all times set forth herein, upon information and belief, the Academy is an educational institution that is an instrumentality of the federal government charged with the responsibility of training the officers of the United States Merchant Marine, located at 300 Steamboat Road, Kings Park, New York. The Academy is owned, operated and/or maintained by the United States Department of Transportation.

10. Captain Anthony J. Ceraolo is the Academy's Acting Superintendent.

## **FACTUAL BACKGROUND**

11. In or about June 2022, Plaintiffs entered the Academy. They are presently in Class of 2026.

12. Plaintiffs are distinguished members of the Academy's soccer team.

13. The Plaintiffs have excellent academic and regimental performance records at the USMMA.

14. On August 17, 2024, Plaintiffs traveled in Ronzoni's car to the beach where the KP Futbol Club Team Movement ("TM") was taking place. Although at the beach, Plaintiffs had limited interaction with members of the men's and women's soccer team.

15. Shortly thereafter, Plaintiffs were interviewed by MIDN Muehlbauer about the TM. Plaintiffs denied seeing anyone consuming alcohol on the beach.

16. On or about August 25, 2024, MIDN Muehlbauer submitted a HB-1 form, in which he claimed that Plaintiffs might have lied to him relating to the TM.

17. An investigation was thereafter undertaken by MIDN Solmos. His investigation included what purports to be notes of interviews that he conducted of other Midshipmen.

18. The matter was thereafter referred to an Honor Board (the "2024 Honor Board").

19. In October 2024, Plaintiffs received case packets for their 2024 Honor Boards. The

3

case packets contained only six witnesses' statements, all of whom provided statements that were arguably incriminating of Plaintiffs.

20. It is beyond evident, however, that more than six individuals were interviewed regarding the claims against Plaintiffs.

21. In fact, the claims against Plaintiffs were brought up in the questioning that took place on Saturday, August 24, 2024, after a women's soccer practice. Multiple members of the men's soccer team, including Mitchell's brother, were questioned by the Honor Board Staff in regard to the claims against Plaintiffs. Members of both the men's and the women's teams were asked questions about the conduct of Plaintiffs at the beach.

22. Yet, none of this was included in the documentation provided to Plaintiffs.

23. Confirming that the Academy has a policy of intentionally not memorializing exculpatory "evidence," MIDN Doshan affirmed that he was interviewed by MIDN Solmos. Tellingly, MIDN Doshan said nothing incriminating regarding Plaintiffs. Plaintiffs, however, have never been provided with his interview.

24. Section 4.3.3(e) of the Academy's Honor Manual states that the role of Investigating Members is to "gather any and all available supporting evidence, documentation, information, etc. that proves **or _disproves_** the allegations made against the accused midshipman" (emphasis added).

25. In blatant and clear violation of the Honor Manual, the Academy intentionally fails to memorialize any interviews that disprove the allegations made against an accused midshipman.

26. Moreover, the exact nature of the charges against Plaintiffs was not clearly delineated. It was unclear if Plaintiffs were claimed to have lied about merely being in the presence of alcohol; providing alcohol; or consuming alcohol on the beach.

27. Plaintiffs attended the 2024 Honor Board in October 2024.

28. In November 2024, they received a decision from Superintendent Nunan. While Superintendent Nunan affirmed the findings of the 2024 Honor Board, she only imposed a penalty of remediation with restrictions for 45 days and 50 hours of extra duty.

29. Plaintiffs submitted a request for reconsideration due to the procedural errors regarding their 2024 Honor Boards.

30. On or about December 12, 2024, Superintendent Nunan granted their request for reconsideration. Superintendent Nunan recognized that the 2024 Honor Board was rife with serious procedural errors that denied Plaintiffs of a fair hearing. Superintendent Nunan stated that Plaintiffs would be entitled to a new hearing where they had "a right under the Honor Process to call witnesses in [their] defense at the hearing."

31. Plaintiffs exercised their right to a new Honor Board.

32. In early August 2025, Plaintiffs were advised that there would not be a new investigation undertaken against them and that they could submit new letters and additional witness statements at the Honor Board, which is consistent with the Academy's Honor Manual.

33. A few weeks later, however, in violation of Section 4.6.4 of the Honor Manual, Plaintiffs were advised that if they wanted to introduce new evidence at the Honor Board that in exchange the honor staff would reopen the investigation against them to "investigate all new evidence." Otherwise, Plaintiffs had to agree not to use any new evidence at the Honor Board.

34. Plaintiffs' second Honor Board was scheduled for late September 2025.

35. Notably, a few weeks prior, MIDN Muehlbauer, who was the individual that submitted an HB-1 against Plaintiffs, provided a signed statement affirming that he would not have opened the HB-1 against them. He makes clear that MIDN Solmos essentially misled him to file an

HB-1. MIDN Muehlbauer noted his concern "that parties outside of the Honor Board at the time may have impacted the Board's ability to hold an impartial and fair hearing." He reiterates his belief that Plaintiffs are innocent.

36. Immediately prior to the start of their Honor Boards, the presiding Midshipman advised that if Plaintiffs offered any new documents or witnesses at the Honor Board that the Honor Board would reopen its investigation.

37. At Ronzoni's 2025 Honor Board, she was told that two witnesses would "testify" at the hearing with written statements, Giovanni Tallini and Derek Vanasse. Since they have since graduated from the Academy, however, Ronzoni had no ability to question them.

38. Even though Plaintiffs providing compelling evidence that belied the claims against them, the Honor Boards found them guilty of lying about the presence of alcohol at the TM.

39. On or about October 20, 2025, they received a decision from Captain Ceraolo, the Acting Superintendent of the Academy. Captain Ceraolo noted that Superintendent Nunan determined that the proper penalty for Plaintiffs' conduct was honor probation with remediation.

40. Captain Ceraolo, however, determined that the proper penalty -- for the same exact conduct -- was a setback to Class of 2027.

41. Pursuant to Honor Code Section 4.8.1.d., Plaintiffs submitted a request for reconsideration to Captain Ceraolo.

42. Ronzoni explained in her reconsideration letter (attached hereto as Exhibit 1 with attachments) that reconsideration was warranted because there were procedural errors and the severity of the punishment is disproportionate to the violation.

43. With regard to the procedural errors, most significantly, even though the Honor Code is clear that Ronzoni was permitted to present "new evidence" at the Honor Board -- without any

restrictions on doing so -- and even though the Nunan Reconsideration Decision never indicates that Ronzoni's presentation of "new evidence" would result in the Honor Board having the opportunity to reopen the new investigation against her, the Honor Board took the position that Ronzoni could not present any new evidence *unless* she agreed to the reopening of the investigation. Doing so is in direct violation of Honor Code Section 4.6.4.

44. Since Ronzoni had no idea exactly what the consequences of a reopened investigation would be, she had no choice and was forced to agree to not present new evidence at the Honor Board.

45. Second, it was represented at the Honor Board that certain Midshipmen made statements about Ronzoni that the Honor Board used to support the claim that she should be found guilty of lying.

46. The "statements," however, are not actual signed statements by the referenced Midshipmen. Rather, they are notes of what MIDN Solmos claimed that the Midshipman stated to him.

47. Given that there is evidence that MIDN Solmos was biased against Ronzoni, this, in and of itself, raises an issue as to the accuracy of the statements. In fact, during the Honor Board the witnesses who appeared, such as MIDN Crooks, acknowledged that her "statement" as written by MIDN Solmos may not have been accurate.

48. Third, it appears that Ronzoni was convicted of lying about the presence of alcohol because: 1) there were red solo cups at the beach; and 2) she collected cell phones from the plebes. Importantly, during the Honor Board the Midshipmen who testified acknowledged that alcohol was consumed by using water bottles and other means *other than* red solo cups. In other words, they confirmed that the presence of red solo cups at the beach *was not* indicative of the consumption of alcohol. And, it became very clear that it was merely an "assumption" that Ronzoni's collection of

cell phones was indicative of her awareness of alcohol consumption.

49. Fourth, in violation of Honor Code Section 4.5.12., it is evident that Ronzoni's right to confidentiality was breached. In fact, numerous Midshipmen were aware of the proceedings against Ronzoni, and she has been harassed, mocked and jeered by other Midshipmen in violation of the Honor Code.

50. Fifth, and perhaps most significantly, in violation of Code Sections 4.5.14. and 4.3.3, it is beyond evident that Ronzoni did **not** receive copies of all interviews that were conducted.

51. Indeed, MIDN Mitchell's brother was interviewed, yet there is no statement from him. And, MIDN Doshan has affirmed that he was interviewed by MIDN Solmos, yet Ronzoni never received a statement from MIDN Doshan. Tellingly, the **only** interviews provided were of six individuals, each of whom supposedly supported the claim that Ronzoni was not honest.

52. It is crystal clear that MIDN Solmos in his "investigation" either intentionally withheld memorializing interviews with individuals who provided information helpful to Ronzoni's position or that these interviews were created and withheld from her.

53. Either scenario is an obvious violation of Code Section 4.3.3., which requires that the investigation memorialize information that "disproves the allegations made against the accused midshipman."

54. In addition to the numerous procedural errors, the punishment is disproportionate to the violation.

55. Notably, Superintendent Nunan imposed a far less severe punishment of remediation and restriction for the same exact conduct.

56. And, Midshipmen who admitted to drinking alcohol after initially lying about it received far less punishment than Ronzoni and Mitchell.

8

57. In fact, the only Midshipmen who received such a harsh penalty were Plaintiffs, who are the only two who had to undergo a second Honor Board, supporting the conclusion that the severe punishment imposed is retribution for merely exercising their rights.

58. In her reconsideration letter (attached hereto as Exhibit 2 with attachments), Mitchell similarly explained that reconsideration was warranted because there were procedural errors and the severity of the punishment is disproportionate to the violation.

59. With regard to the procedural errors, most significantly, even though the Honor Code is clear that Mitchell was permitted to present "new evidence" at the Honor Board -- without any restrictions on doing so -- and even though the Nunan December 2024 Decision never indicates that the presentation of "new evidence" would result in the Honor Board having the opportunity to reopen the new investigation against Mitchell, the Honor Board took the position that Mitchell could not present any new evidence *unless* she agreed to the reopening of the investigation.

60. Doing so is in direct violation of Honor Code Section 4.6.4.

61. Since Mitchell had no idea exactly what the consequences of a reopened investigation would be, she had no choice and was forced to agree to not present new evidence at the Honor Board.

62. Second, in violation of Honor Code Section 4.5.12., it is evident that Mitchell's right to confidentiality was breached. Numerous Midshipmen were aware of the proceedings against Mitchell and she has been harassed, mocked and jeered by other Midshipmen in violation of the Honor Code.

63. Third, in violation of Code Sections 4.5.14. and 4.3.3, it is beyond evident that Mitchell did **not** receive copies of all interviews that were conducted.

64. Indeed, Mitchell's brother was interviewed, yet there is no statement from him.

65. And, MIDN Doshan has affirmed that he was interviewed by MIDN Solmos, yet Mitchell never received a statement from MIDN Doshan.

66. Tellingly, the **only** interviews provided were of six individuals, each of whom supposedly supported the claim that Mitchell was not honest. It is crystal clear that MIDN Solmos in his "investigation" either intentionally withheld memorializing interviews with individuals who provided information helpful to Mitchell's position or that these interviews were created and withheld from Mitchell.

67. Either scenario is an obvious violation of Code Section 4.3.3., which requires that the investigation memorialize information that "disproves the allegations made against the accused midshipman."

68. Fourth, the Honor Board relied upon what were described as incriminating "statements" made about Mitchell by certain Midshipmen. Significantly, however, in actuality, there were no statements made by such Midshipmen. Rather, the "evidence" used against Mitchell consisted of what purport to be MIDN Solmos' notes from interviewing these Midshipman. MIDN Solmos' notes are not signed as accurate by any Midshipman and are nothing more than blatant hearsay.

69. Moreover, when Mitchell questioned these witnesses at the 2025 Honor Board, there were clear doubts shown as to the accuracy of what MIDN Solmos wrote.

70. In addition to the numerous procedural errors, it is evident that the punishment is disproportionate to the violation.

71. As noted, after being found in violation at the 2024 hearing and prior to Mitchell's initial appeal, the former Superintendent directed that Mitchell complete a program of honor remediation, subject to remediation restrictions for a period of 45 days, 50 hours of extra duty

hours (with 20 being community service), make presentations to her peers, maintain an honor remediation journal, weekly meetings with her Senior Remediator, and monthly meetings with the Director of Leadership.

72. This is highly disproportionate to the recommendation of a setback after being found in violation after the 2025 hearing, under the same evidence packet that was used in the 2024 hearing.

73. And, Midshipmen who readily admitted to drinking and who readily admitted to lying about what occurred at the beach received far less punishment than Mitchell.

74. By letter dated December 1, 2025, Captain Ceraolo denied Plaintiffs' requests for reconsideration. See Exhibit 3.

## COUNT I
## RELIEF PURSUANT TO THE ADMINISTRATIVE PROCEDURE ACT

75. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "74" above as if set forth fully herein at length.

76. Defendants are all agents as defined by 5 U.S.C. § 701, and thus, their actions are subject to review under the Administrative Procedure Act.

77. Defendants' actions are final.

78. There is no adequate remedy at law.

79. Defendants' actions, which resulted in the setback of Plaintiffs for one year, are violative of the Academy's own rules and procedures and the Due Process clause of the Fifth Amendment.

80. Defendants' actions, which resulted in the one year setback of Plaintiffs from the Academy, are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law; contrary to Constitutional right (specifically the Due Process clause of the Fifth Amendment); and/or in excess of statutory jurisdiction, authority, or limitations.

81. Pursuant to 5 U.S.C. § 706, this Court should vacate Defendants' decision to set back Plaintiffs for one year.

82. Pursuant to 5 U.S.C. § 706, this Court should compel Defendants to reinstate Plaintiffs to the Academy to continue in the Class of 2026.

**COUNT II**
**VIOLATION OF THE FIFTH AMENDMENT, PROCEDURAL DUE PROCESS**

83. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "82" above as if set forth fully herein at length.

84. Plaintiffs have a property and liberty rights in their education, the degree they sought, an official commission and all other benefits granted thereunder as a result of successfully graduating from the Academy.

85. Defendants' actions with respect to Plaintiffs' property and liberty rights amounted to a deprivation of such rights in that Defendants improperly set back Plaintiffs for one year from the Academy.

86. The deprivation occurred without due process as afforded by the Fifth Amendment of the United States Constitution, as Defendants failed to follow their own procedures to safeguard the rights of Plaintiffs and treated Plaintiffs in a manner that was inconsistent with the manner in which they treated other Midshipmen.

87. Defendants failed to comply with their own procedures as set forth in the Academy's Honor Manual, as detailed above.

88. Defendants' conduct is also violative of 46 CFR, part 310, including 46 CFR parts 310.8, 310.10, 310.65, 310.67.

89. Further, Plaintiffs' punishment is far in excess of any punishment imposed by the Academy for similar conduct, demonstrating that it is arbitrary, capricious and in bad faith. The punishment is also substantially more punitive than the punishment imposed by Superintendent Nunan for the same exact conduct.

90. The decision to set back Plaintiffs was not a careful and deliberate decision.

91. As a result of Defendants' conduct, Plaintiffs are entitled to declaratory and injunctive relief.

## COUNT III
## VIOLATION OF THE FIFTH AMENDMENT, SUBSTANTIVE DUE PROCESS

92. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "91" above as if set forth fully herein at length.

93. Plaintiffs have a property and liberty right in their education, the degree they sought, an official commission and all other benefits granted thereunder as a result of successfully graduating from the Academy.

94. Defendants' actions with respect to Plaintiffs' property and liberty rights amounted to a deprivation of such rights in that Defendants improperly set back Plaintiffs for one year from the Academy.

95. Defendants' decision to set back Plaintiffs was arbitrary and capricious and did not involve the exercise of professional judgment.

96. Defendants' decision to set back Plaintiffs was motivated by bad faith or ill will.

97. Defendants' aforementioned conduct violates Plaintiffs' rights and is in violation of the Fifth Amendment of the United States Constitution.

98. Defendants' violations of the Fifth Amendment have injured and will continue to injure Plaintiffs. Plaintiffs are entitled to equitable and injunctive relief and compensatory damages sustained as a result of Defendants' violations.

WHEREFORE, Plaintiffs request that this Court grant the following relief:

1. Declare the actions of Defendants, their agents, employees, others and successors in interest as violative of the U.S. Constitution and federal law.

2. Pursuant to 5 U.S.C. § 706, set aside Defendants' decision to set back Plaintiffs to the Class of 2027.

3. Afford Plaintiffs all rights and benefits that they would have been afforded but for Defendants' improper conduct.

4. Order Defendants to compensate, reimburse and otherwise make Plaintiffs whole for compensatory and actual damages in an amount to be determined at trial.

5. Direct Defendants to pay Plaintiffs all of their costs, expenses and reasonable attorneys' fees.

6. Grant such other and further relief as is just.

Dated: December 3, 2025

        Respectfully submitted,

        HOGAN & CASSELL, LLP

        By: *Michael Cassell*
        Michael Cassell
        *Attorneys for Plaintiffs*
        500 North Broadway, Suite 153
        Jericho, New York 11753
        Tel. 516-942-4700
        Email: mcassell@hogancassell.com